**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez**

Civil Action No. 19-cv-2480-WJM-KMT

CONRAD JACQUART, and
JADE JAPHET,

    Plaintiffs,

v.

STATE AUTO PROPERTY & CASUALTY INSURANCE COMPANY,

    Defendant.

---

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

---

Plaintiffs Conrad Jacquart and Jade Japhet (jointly, "Plaintiffs") bring this insurance action against Defendant State Auto Property & Casualty Insurance Company ("State Auto"), arguing that State Auto breached its insurance contract with Plaintiffs following a wildfire and has denied payments of covered benefits in bad faith. (ECF No. 41 at 3–4.)

Before the Court is State Auto's Motion for Summary Judgment, filed on April 9, 2020. (ECF No. 46.)  For the reasons explained below, the Motion for Summary Judgment is granted.

## I.  STANDARD OF REVIEW

Summary judgment is warranted under Federal Rule of Civil Procedure 56 "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see also Anderson v.*

*Liberty Lobby, Inc.*, 477 U.S. 242, 248–50 (1986).  A fact is "material" if, under the relevant substantive law, it is essential to proper disposition of the claim.  *Wright v. Abbott Labs., Inc.*, 259 F.3d 1226, 1231–32 (10th Cir. 2001).  An issue is "genuine" if the evidence is such that it might lead a reasonable trier of fact to return a verdict for the nonmoving party.  *Allen v. Muskogee*, 119 F.3d 837, 839 (10th Cir. 1997).

In analyzing a motion for summary judgment, a court must view the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party.  *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).  In addition, the Court must resolve factual ambiguities against the moving party, thus favoring the right to a trial.  *See Houston v. Nat'l Gen. Ins. Co.*, 817 F.2d 83, 85 (10th Cir. 1987).

## II.  BACKGROUND

**A.  Factual Allegations**[1]

### 1.  The Policy

Plaintiffs purchased a homeowner's policy from State Auto, Policy No. 1000037665 ("the Policy") effective September 30, 2017 to September 30, 2018.  (ECF No. 46 at 2 ¶¶ 1–2; ECF No. 46-1.)  Under the Policy, the insured location is listed as 1900 W 6th St., Las Animas, CO 81054 (the "Primary Residence").  (ECF No. 46 at 2 ¶ 3; ECF No. 46-1 at 8.)

---

[1] The following factual summary is based on the parties' briefs on the Motion for Summary Judgment and documents submitted in support thereof.  These facts are undisputed unless attributed to a party or source.  All citations to docketed materials are to the page number in the CM/ECF header, which sometimes differs from a document's internal pagination.

The Policy contains an endorsement entitled "SPECIFIC STRUCTURES AWAY FROM THE RESIDENCE PREMISES" (the "Endorsement") which provides:

> A. We cover each structure described in the Schedule above which is owned by you and located away from the "residence premises," if used by you in connection with the "residence premises." The Limit of Liability shown in the Schedule for each structure is the most we will pay for loss to each structure.
>
> B. We do not cover a structure:
>
> 1. Being used as a dwelling;
>
> 2. Capable of being used as a dwelling;
>
> 3. From which any "business" is conducted;
>
> 4. Used to store "business" property; or
>
> 5. Rented or held for rental to any person not a tenant of the dwelling.

(ECF No. 46 at 3 ¶ 5; ECF No. 46-1 at 120.) "Residence premises" is defined as follows:

> a. The one-family dwelling where you reside;
>
> b. the two-, three- or four-family dwelling where you reside in at least one of the family units; or
>
> c. That part of any other building where you reside;
>
> on the inception date of the policy period shown in the Declarations and which is shown as the "residence premises" in the Declarations.
>
> "Residence premises" also includes other structures and grounds at that location.

(ECF No. 46 at 3 ¶ 6; ECF No. 46-1 at 58.)

2. <u>The La Veta Property</u>

Plaintiffs purchased a property located at TBD Country Road 442, La Veta, CO 80155; Lot 28, La Vita Acres, Filing 3 (the "La Veta Property") in May 2017.  (ECF No. 46 at 3–4 ¶¶ 7, 9.)  The La Veta Property is 119 miles away from the Primary Residence.  (ECF No. 46 at 4 ¶ 8; ECF No. 46-3.)

From approximately June 2017 to March 2018, Jacquart and his father built a 12' by 24' structure on the La Veta Property.  (ECF No. 46 at 4 ¶ 9.)  The structure was insulated and had the following features:

- a slanted corrugated metal roof;
- pre-wiring for electricity with electrical outlets, a breaker box, and an electrical infrastructure powered by a generator;
- hardwood floors;
- five windows;
- a secured door; and
- a wood-burning stove used for heat with a chimney.

(*Id.* at 4 ¶ 10.)  It did not contain any of the following:

- bathroom or kitchen facilities;
- a sewer or running water;
- furniture; or
- carpeting.

(ECF No. 54 at 4 ¶ 10.)

Plaintiffs have admitted that the structure on the La Veta Property was built "with

the possible intent to make the structure habitable in the future." (ECF No. 46 at 4 ¶ 11; ECF No. 41 at 2 ¶ 7.)

On June 27, 2018, Jacquart entered into a Contract to Buy and Sell Real Estate of the La Veta Property with Croatan Tribal Nation. (ECF No. 46 at 10 ¶ 40.)

3.   The Spring Creek Fire

On or about June 27, 2018, a fire started in Huerfano County, Colorado (the "Spring Creek fire"). (*Id.* at 4 ¶ 12.) After learning about the Spring Creek fire, Jacquart contacted his insurance agent, Adam Nevland, to add the Endorsement to the Policy. (ECF No. 46 at 4–5 ¶ 13.) The amended Policy became effective as of June 28, 2018. (*Id.*)

On or about June 30, 2018, a fire caused damage to the structure located on the La Veta Property. (*Id.* at 5 ¶ 14; ECF No. 41 at 2 ¶ 8.)

On July 17, 2018, Plaintiffs' insurance agent reported the loss to the structure and filed a claim with State Auto. (ECF No. 46 at 5 ¶ 15.) During subsequent calls with State Auto's adjuster, Brent Mims, Jacquart referred to the structure on the La Veta Property as a "tiny house." (*Id.* at 5 ¶ 16; ECF No. 46-2 at 20.) Jacquart also sent Mims an email referring to the structure as "the cabin/tiny house." (ECF No. 46 at 5 ¶ 17; ECF No. 46-9 at 1.) Thereafter, Mims informed Jacquart that the Endorsement provides coverage for structures such as sheds and storage buildings, not dwellings or structures capable of being used as a dwelling. (ECF No. 46 at 7 ¶ 22.)

On August 3, 2018, State Auto sent Plaintiffs a reservation of rights letter, advising them that it was "reserving all rights relative to this claim, and will be

5

undertaking a thorough investigation of this claim." (*Id.* at 7 ¶ 23; ECF No. 46-12.)

State Auto opened a claim with its Special Investigations Unit, which retained Ryan R. Robison & Company to obtain a recorded statement from Plaintiffs. (ECF No. 46 at 7 ¶ 25.) During a August 11, 2018 conversation with State Auto's investigator, Jacquart represented that although he purchased the La Veta Property as a getaway place, his family has never used the structure because he was still adding features such as siding, carpets, and cabinets. (*Id.* at 7 ¶¶ 26–27.) He also represented that Plaintiffs were storing lumber, a BBQ grill, table, chair, and extension cords at the La Veta Property, and had chairs and tables outside of the structure. (*Id.* at 8 ¶ 28.) On November 7, 2018, State Auto took an examination under oath of Jacquart. (*Id.* at 8 ¶ 30.)

On November 21, 2018, State Auto denied coverage for Plaintiffs' insurance claim on the basis that it was excluded from coverage under the Policy's Endorsement, which provides that State Auto would cover structures "owned by [Plaintiffs] and located away from the 'residence premises,' if used by [Plaintiffs] in connection with the 'residence premises.'" (*Id.* at 9 ¶ 33; ECF No. 46-13.)

## B.   Procedural History

On July 30, 2019, Jacquart filed a complaint in Huerfano County District Court, and State Auto removed the action on August 30, 2019. (ECF No. 1 at 1.) On March 3, 2020, Plaintiffs filed an amended complaint (the "Complaint"). (ECF No. 41.) Plaintiffs allege that State Auto breached the Policy (ECF No. 41 ¶¶ 13–14) and acted in bad faith by unreasonably denying their insurance claim (*id.* ¶¶ 15–25).

On April 9, 2020, State Auto filed the Motion for Summary Judgment. (ECF No. 46.) Plaintiffs responded on May 6, 2020 (ECF No. 54), and State Auto replied on May 20, 2020 (ECF No. 55).

### III.  ANALYSIS

**A.     Principles of Insurance Policy Construction**

In a contract case, a motion for summary judgment allows for contract interpretation as a matter of law. *Lake Durango Water Co., Inc. v. Pub. Utils. Comm'n of Colo.*, 67 P.3d 12, 20 (Colo. 2003) (en banc). Under Colorado law, courts construe insurance policies "using general principles of contract interpretation." *Greystone Constr., Inc. v. Nat'l Fire & Marine Ins. Co.*, 661 F.3d 1272, 1283 (10th Cir. 2011). Therefore, absent an ambiguity, a policy's language is construed according to its plain meaning. *Id*. However, in recognition of the unique relationship between insurer and insured, courts "construe ambiguous provisions against the insurer and in favor of providing coverage to the insured." *Id*. at 1284.

To determine whether a provision is ambiguous, "the instrument's language must be examined and construed in harmony with the plain and generally accepted meaning of the words employed, and reference must be made to all the provisions of the agreement." *Radiology Prof'l Corp. v. Trinidad Area Health Ass'n, Inc.*, 577 P.2d 748, 750 (Colo. 1978) (en banc); *Martinez v. Am. Family Mut. Ins. Co.*, 413 P.3d 201, 203 (Colo. App. 2017) (recognizing that courts "read the provisions of the policy as a whole, construing the policy so that all provisions are harmonious and none is rendered meaningless"). Courts should avoid "strained constructions" in favor of "common

7

constructions," and technical and legal definitions should also be avoided. *Dish Network Corp. v. Arch Specialty Ins. Co.*, 989 F. Supp. 2d 1137, 1144 (D. Colo. 2013). "In other words, the plain meaning of the words should be employed in a lay manner consistent with what would be understood by a person of ordinary intelligence." *Id.*; *Ad Two, Inc. v. City & Cnty. of Denver*, 9 P.3d 373, 377 (Colo. 2000) (recognizing that "[t]he mere fact that the parties may have different opinions regarding the interpretation of the contract does not itself create ambiguity in the contract").

Moreover, in insurance coverage disputes, "the insurer has the burden of proving that the facts fall within the policy's exclusions." *Rivelli v. Twin City Fire Ins. Co.*, 359 F. App'x 1, 4 (10th Cir. 2009); *RK Mech., Inc. v. Travelers Prop. Cas. Co. of Am.*, 944 F. Supp. 2d 1013, 1020 (D. Colo. 2011) ("When an insurance company seeks to limit or exclude coverage under the terms of an insurance policy, the insurer bears the burden of proving that a particular loss falls within an exclusion in the contract.").

### B.  Whether the La Veta Property Was Used In Connection with the Primary Residence

State Auto contends that the La Veta Property is not covered under the Policy's Endorsement, which provides that State Auto would cover structures "owned by [Plaintiffs] and located away from the 'residence premises,' if used by [Plaintiffs] in connection with the 'residence premises.'" (ECF No. 46 at 13.)  According to State Auto, Plaintiffs cannot establish that the La Veta Property was used "in connection" with the Primary Residence. (*Id.* at 14.)

In response, Plaintiffs provide three examples of how they used the La Veta Property in connection with the Primary Residence. (ECF No. 54 at 11–12.)

First, Plaintiffs argue that they utilized the La Veta Property as "an escape from the heat" of the Primary Residence. (*Id.* at 11.) The plain and ordinary meaning of the Endorsement language, however, contradicts Plaintiffs' argument. By utilizing the La Veta Property as an "escape" from the Primary Residence, Plaintiffs were effectively using the La Veta Property as *an alternative to,* or *instead of*, the Primary Residence. The Court finds that a person of ordinary intelligence would not ordinarily consider a getaway to be used "in connection with the 'residence premises.'" *See Dish Network*, 989 F. Supp. 2d at 1144 (interpreting contractual language in a lay manner consistent with what would be understood by a person of ordinary intelligence and avoiding strained constructions).

Second, Plaintiffs contend that they used the La Veta Property to "store and make use of recreational equipment owned by the insured but which cannot be enjoyed by insured at the residence premises" which they otherwise would have had to store at the Primary Residence. (ECF No. 54 at 11–12.)

This purported connection strains credulity and cannot reasonably be viewed as a use in connection with the Primary Residence. Unlike a backyard shed or garage which holds items *actually used* at the Primary Residence, the La Veta Property held items that Plaintiffs could not enjoy—*and did not use*—at the Primary Residence. (*See* ECF No. 46-15 at 5 (admitting that the La Veta Property is "too far away" to store items used at the Primary Residence).) If the Court accepted Plaintiffs' argument that the mere storage of items which could not be used at the Primary Residence could establish coverage under the Policy, *any* property owned by Plaintiffs and located away

9

from the residence premises would be subject to coverage. This construction would render the definition of the insured location meaningless and provide no discernable limit to coverage. *See Martinez*, 413 P.3d at 203. Plaintiffs' argument is therefore unavailing.

Third, Plaintiffs argue that they stored unused carpet at the La Veta Property that "[Mr. Jacques] had considered installing in his residence premises." (ECF No. 54 at 12; ECF No. 54-11 at 10–11.) Apart from Jacques's deposition testimony, Plaintiffs cite no evidence supporting this purported intended use.[2] At any rate, the mere fact that Plaintiffs had "considered" using *one item* stored at the La Veta Property for the Primary Residence is wholly insufficient for a reasonable fact finder to conclude that the La Veta Property itself was used in connection with the Primary Residence.

Apart from Plaintiffs' ownership of both properties, Plaintiffs have not established that there is a credible link, relationship, or association between the Primary Residence and the La Veta Property. In addition to being located 119 miles away from the Primary Residence (*see* ECF No. 46-3), Plaintiffs' use and enjoyment of the La Veta Property as a getaway was distinct from their use of the Primary Residence.

Moreover, as Jacquart testified during his deposition, the La Veta Property was purchased as an investment property that Plaintiffs planned to sell at the time of the fire. (ECF No. 46-2 at 11–14; *see also* ECF No. 46-14 (noting in their loan paperwork that the primary purpose of the loan used to purchase the property was for "Business

---

[2] The Court notes that Jacques's deposition testimony regarding his intent to install the unused carpet at his primary residence is contradicted by his November 7, 2018 examination under oath, during which Jacques stated that he was intending to install the unused roll of carpet in the loft the La Veta Property. (ECF No. 46-4 at 11.)

10

(Including Real Estate Business)").) The fact that Plaintiffs utilized the La Veta Property as an investment opportunity—which they had contracted to sell at the time of the Spring Creek fire—contradicts the notion that the property was used in connection with the Primary Residence.

Accordingly, the Court finds that the Endorsement does not cover the La Veta Property. Because the Policy language is unambiguous, the Court need not consider extrinsic evidence to interpret the endorsement. *See City of Golden v. Simpson*, 83 P.3d 87, 93 (Colo. 2004) ("If the terms are clear, a court will neither look outside the four corners of the instrument, nor admit extrinsic evidence to aid in interpretation."). This determination alone is sufficient for the Court to conclude that summary judgment should be granted in favor of State Auto as to Plaintiffs' breach of insurance contract claim.

**C.     Whether Coverage for Loss is Excluded Under the Policy**

State Auto argues that even if Plaintiffs used the La Veta Property in connection with the Primary Residence, it is still not covered under the Policy because the Endorsement explicitly excludes structures "capable of being used as a dwelling" from coverage. (ECF No. 46 at 21; ECF No. 46-1 at 120.)

In response, Plaintiffs argue that the Policy defines the term "dwelling" as "the main residential home" and that, applying this definition, the Endorsement only excludes "specific structures located away from the residence premises that are capable of being used as the main residence." (ECF No. 54 at 22 (citing ECF No. 54-3 at 3, 17).) The Court finds, however, that this definition is not applicable to its analysis

of the Endorsement. The Policy's definition of "dwelling" is made in reference to the Primary Residence, *i.e.* the insured location under the homeowner's Policy. The Policy states that "*[t]he* dwelling is the main residential home" but does not define *"a"* dwelling outside of this context. Accordingly, the Court will determine whether the La Veta Property was capable of being used as a dwelling using the plain and ordinary meaning for a "dwelling."

Plaintiffs next argue that material disputed facts exist regarding whether the La Veta Property was capable of being used as a dwelling and that the Policy language is ambiguous and susceptible to more than one reasonable interpretation. They argue that "[f]or people of ordinary intelligence, this could mean a wide array of things, *i.e.* some can live with significantly less comforts than others." (ECF No. 54 at 24.) According to Plaintiffs, a dwelling within the twenty-first century requires, at the very least, running water, electricity, bathroom facilities, heat, kitchen facilities, and furniture. (*Id.*) They also argue that many people would also consider "air conditioning, high-speed internet service, wi-fi, [and] cable" to be must-have amenities. (*Id.*) The Court disagrees.

As traditionally understood, a dwelling is a "house or structure in which one or more people live; a residence or abode." *Dwelling*, Black's Law Dictionary (10th ed. 2014); *see also Compass Ins. Co. v. City of Littleton*, 984 P.2d 606, 619 (Colo. 1999) (en banc) (recognizing that "it is certainly appropriate to rely on dictionary definitions of undefined terms used in an insurance contract"). As such, a structure capable of being a dwelling is one in which one or more people could live.

Although Plaintiffs attempt to limit the definition of a dwelling to a structure that comports with their version of a comfortable, twenty-first century dwelling, the Policy contains no such limitations.  Here, the La Veta Property—which has a roof, a wood-burning stove used for heat, insulation, a secure door, an electrical infrastructure powered by a generator, and a grill outside for onsite cooking—is certainly *capable* of being used as a dwelling.  That the structure lacks running water and bathroom and kitchen facilities does not change this fact.  After all, many dwellings around the world—including off-the-grid dwellings within Colorado—often lack access to running water or bathroom facilities.[3]

Accordingly, after analyzing the plain language of the exclusions to the Endorsement, the Court finds that the structure on the La Veta Property was capable of being used as a dwelling and is therefore excluded from coverage under the Policy.[4] The Court therefore grants summary judgment in favor of State Auto as to Plaintiffs'

---

[3] The Court notes that there is ample evidence suggesting that Plaintiffs considered the La Veta Property to be a dwelling as well.  Prior to Mims informing Jacquart that the Endorsement does not provide coverage for structures capable of being used as a dwelling, Jacquart referred to the structure on the La Veta Property as a "tiny house" or a cabin on multiple occasions.  (ECF No. 46 at 5, 7 ¶¶ 16–17, 22; ECF No. 54 at 4–5 ¶¶ 16–17; ECF No. 46-2 at 20; ECF No. 46-9 at 1.)  Plaintiffs have also admitted that their family planned to sleep in the loft when visiting Mr. Jacquart's parents.  (ECF No. 46 at 8 ¶ 31.)

[4] The Court further notes that Plaintiffs have not presented specific facts suggesting that, "through procedural or substantive deception attributable to the insurer, an objectively reasonable insured would have believed he or she possessed coverage later denied by an insurer," such that the Court should determine that the Endorsement's exclusionary language is not enforceable.  *Bailey v. Lincoln Gen. Ins. Co.*, 255 P.3d 1039, 1054 (Colo. 2011) (en banc) (recognizing that policyholders' "bare allegations" that they expected certain coverage are insufficient to establish grounds for relief sounding in reasonable expectations); *Tynan's Nissan v. Am. Hardware Mut. Ins. Co.*, 917 P.2d 321, 324 (Colo. App. 1995) (an insured's expectations of coverage are not "reasonable" if they are "contrary to the plain and ordinary meaning of the policy language" and courts "will not alter the terms of coverage simply because an insured thought it had coverage").

breach of insurance contact claim.

### D.     Bad Faith Claims

State Auto is also entitled to summary judgment in its favor on Plaintiffs' statutory and common law bad faith breach of insurance contract claims. Generally, this Court has held that where a party's breach of insurance contract claim fails, the corresponding (and derivative) statutory and common law bad faith breach of insurance contract claims fail as well. *See Johnson v. Am. Nat'l Prop. & Cas. Cos.*, 2019 WL 463026, at *5 (D. Colo. Feb. 6, 2019).

Here, the Court has determined that the La Veta Property is not covered under the Policy. As a result, Plaintiffs cannot demonstrate that State Auto breached the insurance contract, much less that it did so in bad faith. Thus, the Court also grants the Motion for Summary Judgment in favor of State Auto on Plaintiffs' common law and statutory bad faith breach of insurance contract claims.

### IV.  CONCLUSION

For the reasons set forth above, the Court ORDERS as follows:

1. Defendant State Auto Property & Casualty Insurance Company's Motion for Summary Judgment (ECF No. 46) is GRANTED as to all claims;
2. Plaintiffs' claims are dismissed with prejudice;
3. Judgment shall enter in favor of Defendant and against Plaintiffs, and Defendant shall have its costs upon compliance with D.C.COLO.LCivR 54.1; and
4. The Clerk shall terminate this action.

Dated this 2nd day of December, 2020.

BY THE COURT:

William J. Martinez
United States District Judge